**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

LINNOSKA CORREA-CARRILLO, in
representation of her minor
daughter JPC,

     **Plaintiff,**

       v.                       **CIVIL NO. 17-2253 (RAM)**

GRUPO HIMA SAN PABLO-FAJARDO INC
ET AL.,

     **Defendants.**

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court are Defendant CMT HIMA San Pablo (Fajardo), Inc's ("Defendant" or "HIMA") *Motion for Judgment as a Matter of Law as per FRCP 50(B)* (Docket No. 152); *Motion for New Trial as per FRCP 59 and/or Remittitur* (Docket No. 153); and *Motion Requesting Amendment of Judgment Entered* (Docket No. 154) (jointly, "the *Motions*"). Plaintiff's mother Linnoska Correa-Carrillo, in representation of her minor daughter JPC ("Plaintiff"), filed an opposition to Defendant's *Motions* ("*Opposition*"). (Docket No. 159). Defendant subsequently replied to Plaintiff's *Opposition* ("*Reply*"). (Docket No. 168). For the reasons discussed below, Defendant's *Motion for Judgment as a Matter of Law* is **DENIED**, Defendant's *Motion for New Trial and/or Remittitur* is **GRANTED IN PART AND DENIED IN PART**, and Defendant's

*Motion Requesting Amendment of Judgment Entered* is **DISMISSED AS MOOT**.

## I.  BACKGROUND

On July 9, 2021, a jury determined that HIMA and Dr. Luis E. Pardo-Toro ("Dr. Pardo")[1] committed negligent acts prior to and during Plaintiff's birth that proximately caused her cerebral palsy and other serious medical problems. (Docket No. 147). The jury apportioned forty (40%) percent of the negligence to HIMA and the remaining sixty percent to Dr. Pardo. Id. at 3. The jury then awarded $8,000,000 for Plaintiff's physical damages and an additional $8,000,000 for her past and future mental anguish and suffering. Id.[2] Defendant now asks this Court to set aside the jury's finding of negligence and its damages award.

On August 6, 2021, Defendant filed its posttrial *Motions*. (Docket Nos. 152 and 153).[3] In those *Motions*, Defendant asks the Court to dismiss Plaintiff's claims in their entirety or, alternatively, grant a new trial or remit the "shocking" and

---

[1] Dr. Pardo was Plaintiff's mother's OB-GYN. He was no longer a defendant in this case at the time of trial.

[2] Thus, Defendant is responsible for a combined $6,400,000.

[3] Defendant initially made an oral motion for judgment as a matter of law following Plaintiff's case in chief. (Docket No. 152-2 at 142-45). The Court granted that motion as to the claims for (1) future expenses for medical care and treatment; (2) loss of potential to generate future income; and (3) vicarious liability against HIMA with respect to Dr. Pardo. Id. at 147-49. The Court denied Defendant's motion as to HIMA's potential liability for its nurses' breach of their standard of care. Id. Defendant then renewed its motion for judgment as a matter of law after the defense rested, which this Court denied in full. (Docket No. 152-3 at 83).

"excessive" award of damages. Id. On September 24, 2021, Plaintiff filed her combined *Opposition* to the *Motions*, arguing the jury verdict should be upheld. (Docket No. 159). And on October 20, 2021, Defendant filed its *Reply*, addressing each of the contentions made in the *Opposition*. (Docket No. 168). On August 9, 2021, Defendant also filed a *Motion Requesting Amendment of Judgment Entered*, which is addressed below in section II.D. (Docket No. 154).

## II.   ANALYSIS

### A. Judgment as a Matter of Law Under Rule 50

Pursuant to Fed. R. Civ. P. 50 ("Rule 50"), a party may renew a motion for judgment as a matter of law "[n]o later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged[.]" Fed. R. Civ. P. 50(b). In ruling on the renewed motion, the court may: "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Id. "Courts may only grant a judgment contravening a jury's determination when the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 9 (1st Cir. 2004) (internal quotation marks and citation omitted). In conducting this analysis, "courts may not consider the

credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence." Annoni Mesias v. Hosp. HIMA San Pablo, 2021 WL 1125019 at *1 (D.P.R. 2021) (internal quotation marks and citation omitted).

The substantive law of Puerto Rico governs this medical malpractice diversity suit. See Marcano Rivera v. Turabo Med. Ctr. P'ship, 415 F.3d 162, 167 (1st Cir. 2005). "To prevail on a medical malpractice claim under Puerto Rico law, a party must establish (1) the duty owed; (2) an act or omission transgressing that duty; and (3) a sufficient causal nexus between the breach and the harm." Id. (internal quotation marks and citation omitted). Here, Defendant challenges the sufficiency of the evidence as to the duty owed and causation (i.e., prongs one and three). (Docket No. 152).

1. Standard of Care

Defendant argues Plaintiff failed to establish the standard of care applicable to nurses in Puerto Rico. Id. at 49-50. In discussing the standard of care owed specifically by nurses, the Supreme Court of Puerto Rico has held that "'[a] nurse should exercise a certain standard of reasonable care to see that no unnecessary harm comes to the patient, and said standard of care must be the same as the standard of care exercised by other nurses in the locality or similar localities.'" Morales v. Monagas, 723 F. Supp. 2d 416, 422 (D.P.R. 2010) (quoting Blas v. Hosp.

_Guadalupe_, 146 D.P.R. 267, 307 (1998)). Additionally, "[n]urses have the unavoidable duty to fulfill medical orders with the required urgency and in accordance with each patient's particular circumstances." _Id._ (internal quotation marks and citation omitted).

The standard of care ordinarily must be established through expert testimony. _See_ _Lama v. Borras_, 16 F.3d 473, 478 (1st Cir. 1994) ("[I]n the case of duty . . . expert testimony is generally essential."). In the case at bar, Plaintiff relied solely on the testimony of her expert witness, Dr. Barry Schifrin ("Dr. Schifrin"), to establish the standard of care applicable to the HIMA nursing staff. At trial, Dr. Schifrin answered many questions about the applicable standard of care, and explained that, generally, nurses "have a duty to report things that are abnormal and if they are sufficiently abnormal, not only to alert the doctor but to insist upon the presence of the doctor at the patient's bedside." (Docket No. 152-2 at 46). He also testified about the specific duties the nurses in the emergency room and delivery room had here. Most notably, according to Dr. Schifrin, the nurses had a duty to continually monitor Plaintiff's mother's fetal monitoring strips, particularly when the physician was not present. _Id._ at 54, 67.

While he provided helpful testimony to the jury regarding the duty owed by the HIMA nurses to Plaintiff and her mother, Dr.

Schifrin was unable to articulate a professional standard of care for nurses that is specific to Puerto Rico. Id. at 21. Defendant primarily challenges Dr. Schifrin's testimony on this ground, arguing that his inability to articulate a Puerto-Rico-specific standard of care rendered his testimony too general, and thus Plaintiff failed to provide sufficient evidence to establish the duty owed by the HIMA nurses (prong one of Plaintiff's cause of action). (Docket No. 152 at 51-52). However, while the Court notes Dr. Schifrin's admitted limitations,[4] Defendant **failed to establish how the local standard of care is different in any material respect from the standard of care that Dr. Schifrin testified to at trial.** In fact, just last month, the First Circuit held that the jury in a very similar case was entitled to credit the plaintiff's expert's opinion "that the applicable standards of care in Puerto Rico and the rest of the United States are the same." Rodriguez-Valentin v. Doctors' Ctr. Hosp. (Manati), Inc., 2022 WL 556194, at *5 (1st Cir. 2022).[5] Similarly, here, the jury properly credited Dr. Schifrin's opinion as to the applicable standard of care. Dr. Schifrin's testimony provided the jury with sufficient evidence from which to discern the duty owed by the HIMA nurses to Plaintiff

---

[4] Dr. Schifrin readily admitted he did "not have an understanding of those specific nursing standards of care that are unique to Puerto Rico." (Docket No. 152-2 at 21).

[5] However, the First Circuit did not rule on whether the district court correctly interpreted Puerto Rico law. Id. at *5 n.7.

and her mother in this case.

        2. Causation

    Defendant also contends that Plaintiff failed to submit any evidence to establish a causal link between HIMA's negligence and Plaintiff's cerebral palsy (prong three of Plaintiff's cause of action). (Docket No. 152 at 38-49). Defendant raises three specific causation arguments. First, HIMA contends that Plaintiff fatally relied solely on Dr. Schifrin's testimony to establish causation, while Dr. Schifrin, by his own admission, was not a causation expert. Id. at 38-40. Second, Defendant argues that the medical record objectively shows that there was no hypoxic event in this case, and thus it was impossible for a hypoxic event to have caused Plaintiff's harm. Id. at 40-43. Finally, Defendant claims that Dr. Schifrin's medical opinions and testimony were improperly based on the incorrect premise that Dr. Pardo was not at the hospital during key moments in this case, and thus his testimony as to causation should be disregarded. Id. at 43-49. Each argument is addressed in turn below.

                i.  Dr. Schifrin's Testimony on Causation

    First, Defendant posits that Dr. Schifrin's testimony was insufficient to establish causation because Dr. Schifrin, by his own admission, was not able to conclusively tie Plaintiff's cerebral palsy to Defendant's alleged negligence. Id. at 38-40. Further, Defendant contends that Plaintiff failed to meet her

burden of proof on causation because Dr. Schifrin was not able to rule out other potential causes of Plaintiff's cerebral palsy. (Docket No. 152 at 39-40). In his Daubert hearing, Dr. Schifrin testified that he was only qualified to "contribute to causation" but could not "be the expert who assigns the injury to the patient." (Docket No. 152-1 at 28). And on cross examination at trial, he testified he would not make a specific statement that Plaintiff's cerebral palsy was *exclusively* caused by the hypoxic event that occurred during delivery. (Docket No. 152-2 at 115).

While the Court agrees that Dr. Schifrin, as Plaintiff's sole expert witness, never conclusively tied the alleged hypoxic event to Defendant's negligence, Defendant incorrectly argues that Plaintiff had the burden to do so. It is well settled that, to establish causality in a medical malpractice action under Puerto Rico law, a plaintiff must prove **by a preponderance of the evidence**[6] that the defendant's negligent conduct was the factor that **"most probably"** caused the harm to the plaintiff. Lama, 16 F.3d at 478 (emphasis added). Causation "need not be established with mathematical accuracy; neither must all other cause of damage be eliminated." Id. (citation omitted). Here, Dr. Schifrin walked the jury through the data in the medical record and explained how and why he believes Dr. Pardo and the HIMA staff failed to adequately

---

[6] "Preponderance of the evidence" only means "more likely true than not." Diaz-Alarcon v. Flandez-Marcel, 944 F.3d 303, 305 n.2 (1st Cir. 2019) (internal quotation marks and citation omitted).

care for Plaintiff. Dr. Schifrin also addressed the other potential causes of Plaintiff's cerebral palsy, clarifying that they are not *causes* of cerebral palsy, but instead *risk factors* that increase the likelihood of developing cerebral palsy. (Docket No. 152-2 at 117). Therefore, despite never conclusively tying Defendant's actions to Plaintiff's cerebral palsy, Dr. Schifrin's testimony was sufficient to allow the jury to rationally determine that Defendant's negligence was the factor that "most probably" caused the harm to Plaintiff. *See* Lama, 16 F.3d at 478.

### ii. *Evidence of a Hypoxic Event in the Medical Record*

Defendant also contends that Plaintiff failed to establish causality at trial because, "[a]s a factual and legal matter, there is no clinical evidence from the plaintiff's medical records which supports the opinion that a hypoxic event or injury occurred." (Docket No. 152 at 40). Therefore, according to Defendant, Plaintiff's theory that a hypoxic event caused her cerebral palsy cannot be true and warrants judgment as a matter of law in Defendant's favor. Id. at 40-43.

This challenge to causation fails for largely the same reasons as the first. As noted above, Dr. Schifrin explained what he saw in the medical data and how that informed his professional opinion in this case. When asked his ultimate professional opinion regarding the cause of Plaintiff's cerebral palsy based on the

data he reviewed, Dr. Schifrin said, "I believe the cerebral palsy is related to the hypoxic ischemic episode in turn related to the abruption of the placenta. That is the most obvious and that is clearly what is going on essentially from the outset." (Docket No. 152-2 at 133). While Defendant unsurprisingly believes that the jury should have credited the medical conclusions of Dr. Pardo, "credibility determinations are for the jury," and contradictory expert testimony "does nothing to vitiate the sufficiency of the plaintiff's proof." Muniz v. Rovira, 373 F.3d 1, 5 (1st Cir. 2004) (internal quotation marks and citation omitted). The jury heard the informed opinions of both Dr. Schifrin and Dr. Pardo and apparently gave more weight to Dr. Schifrin's medical analysis. The Court sees nothing in the record that would warrant judgment as a matter of law on this point. The testimony, viewed in the light most favorable to the verdict, supports the jury's determination. *See* Lama, 16 F.3d at 475.

### *iii.  Dr. Pardo's Presence at the Hospital*

Third, Defendant challenges Dr. Schifrin's testimony to the extent that it inferred and was premised on the incorrect assumption that Dr. Pardo was not present and actively monitoring the fetal strips throughout Plaintiff's mother's stay at HIMA. (Docket No. 152 at 43-49). According to Defendant, Dr. Schifrin's testimony was impermissibly speculative and insufficient to establish causation. Id. at 49. This argument fails for at least

three reasons.

First, Defendant's contention once again boils down to an improper challenge of the jury's credibility determination. As noted above, the First Circuit has clearly stated that "credibility determinations are for the jury." Muniz, 373 F.3d at 5. At trial, Dr. Schifrin admitted that he did not know precisely when Dr. Pardo was present at the hospital. (Docket No. 152-2 at 54). And defense counsel spent a significant portion of his direct examination of Dr. Pardo establishing the precise times he was and was not at the hospital. (Docket No. 152-3 at 20-25). Further, during his closing argument, defense counsel urged the jury to credit Dr. Pardo's testimony over Dr. Schifrin's, in part because Dr. Schifrin was only able to testify about the events after the fact while Dr. Pardo was the physician in the room who testified about his personal observations. (Docket No. 152-4 at 26). Even when presented with that testimony and those arguments, the jury ostensibly found that Dr. Schifrin was more credible and thus chose to believe his analysis. The jury had a right to do so, and the Court will not overturn that judgment on a Rule 50 motion.

Second, Defendant's argument omits a key piece of the timeline. The theme of Dr. Schifrin's testimony was "time was of the essence." Dr. Schifrin testified that both Dr. Pardo and the HIMA nurses failed to adequately care for Plaintiff when they chose not to immediately conduct a C-section shortly after the mother's

arrival at the hospital. (*See* Docket No. 152-2 at 34-35). Dr. Schifrin stated that "the mother had to be transferred immediately into the obstetrical facility at the hospital when she comes there presenting with pain of significant duration." Id. at 34. He later explained that "[t]he baby should have been delivered shortly after admission with examination[.]" Id. at 58. Meanwhile, the jury heard the mother explain how she spent three hours in the emergency room before the nurses moved her to the delivery room. (Docket No. 152-1 at 95). She also testified that, during that time, she only saw the nurses once — when they placed the fetal heart monitoring belts on her. Id. at 97-99. Therefore, even if Dr. Pardo arrived at the hospital shortly after Plaintiff's mother's arrival, it is plausible that the HIMA nurses negligently cared for her before moving her to the delivery room.

Third, Dr. Pardo's testimony allows for a finding that he was not with and constantly monitoring Plaintiff's mother throughout her stay at the hospital. Dr. Pardo testified he went home for the night sometime after 11:00pm on July 30. (Docket No. 152-3 at 21-22). And, although he stated that he was at his office, which is "right next to the hospital," on July 31, that is different than explaining he was at the patient's bedside during the entirety of the day monitoring her status. Id. at 25.

Simply put, when the trial testimony is viewed in the light most favorable to the verdict, Defendant's argument fails. Dr.

Schifrin's testimony was not fatally reliant on the incorrect premise that Dr. Pardo was not at the hospital continuously monitoring Plaintiff's mother's status during the entire duration of the relevant time period in this case.

### 3. Future Damages

Finally, Defendant argues that it is entitled to judgment as a matter of law because Plaintiff failed to present any evidence of future damages. (Docket No. 152 at 58-61). The Court recognized the dearth of evidence concerning future damages when ruling on Defendant's original Rule 50 motion. (Docket No. 152-2 at 147-49). That is why the Court limited Plaintiff's claim for future damages to solely future mental anguish and suffering. Id. at 148. The jury verdict form reflected that ruling. (Docket No. 147 at 3). While limited, Plaintiff presented enough evidence of future mental anguish and suffering damages to preclude a finding of judgment as a matter of law.

Defendant primarily contends that Plaintiff was required to present expert testimony to establish future mental anguish and suffering damages. (See Docket No. 152 at 59). However, such expert testimony is not necessary when the jury is presented with sufficient non-expert testimony. See Rodriguez-Valentin v. Doctors' Ctr. Hosp. (Manati), Inc., 2020 WL 6273760, at *5, aff'd, 2022 WL 556194 (1st Cir. 2022). Here, the jury heard from Plaintiff's mother, who detailed Plaintiff's daily struggles.

According to the mother, Plaintiff suffers from cerebral palsy, quadriplegia, asthma, developmental delay, and septicity. (Docket No. 152-1 at 91-92). She hits herself, bites herself, tears at her hair, has frequent seizures, cannot speak, cannot eat on her own, has a hard time using the bathroom on her own, and cannot focus. Id. at 91, 106. As the mother put it, "[e]verything [Plaintiff] does, she does with a lot of difficulty." Id. at 91. While undoubtedly the best course of action in this case would have been for Plaintiff to present expert testimony on life expectancy, after reviewing the record, the Court finds that the jury was entitled to award future mental anguish and suffering damages based on the evidence presented at trial.

### 4. Conclusion

For the reasons outlined above, Defendant's *Motion for Judgment as a Matter of Law as per FRCP 50(B)* at Docket No. 152 is **DENIED**.

### B. New Trial Under Rule 59

In the alternative, Defendant contends that this Court should order a new trial pursuant to Fed. R. Civ. P. 59 ("Rule 59"). Rule 59 states that "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party— . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1). "A district court's power to grant a motion for new trial

is much broader than its power to grant a Rule 50 motion." <u>Rodriguez-Valentin</u>, 2022 WL 556194, at *5 (quoting <u>Jennings v. Jones</u>, 587 F.3d 430, 436 (1st Cir. 2009)). On a Rule 59 motion, "the court need not take the evidence in the light most favorable to the nonmoving party." <u>Id.</u> However, trial judges do not sit as thirteenth jurors. <u>Id.</u> Therefore, the First Circuit has stated that, "when reviewing a denial of a motion for new trial that was, at bottom, based on sufficiency of the evidence, the standards under Rule 50 and Rule 59 effectively merge." <u>Id.</u> (internal quotation marks and citations omitted).

Defendant asks the Court to grant a new trial for four reasons: (1) the verdict is against the weight of the evidence; (2) the Court wrongly denied Defendant's pretrial <u>Daubert</u> challenge; (3) the Court erred in including a particular jury instruction and a question on the verdict form; and (4) the Court allowed Plaintiff's counsel to make improper statements during his closing argument. (Docket No. 153). Each argument is addressed below.

### 1. <u>Weight of the Evidence</u>

First, Defendant posits that, for the same reasons outlined in its Rule 50 motion, this Court should grant a new trial because the verdict is against the weight of the evidence. <u>Id.</u> at 5. Specifically, Defendant rehashes the arguments discussed above concerning Plaintiff's inability to establish causation, the

nurses' standard of care, and future damages. Id. at 5-11. As discussed in the previous section, *supra* part II.A., the verdict as to liability is not against the weight of the trial evidence. Thus, Defendant has failed to show that a new trial is warranted for the reasons discussed above.

### 2. Daubert Challenge

Next, Defendant contends that it is entitled to a new trial because this Court erred in denying Defendant's pretrial Daubert challenge to Dr. Schifrin's testimony. Id. at 11-24. On July 6, 2021, this Court conducted a pretrial Daubert hearing outside the presence of the jury. (Docket No. 152-1 at 4-58). The Court heard testimony ranging from Dr. Schifrin's background and experience to how he prepared his expert report and came to his professional conclusions. Id. On July 7, 2021, the Court issued an Opinion and Order denying Defendant's Daubert challenge and explaining why Dr. Schifrin's testimony was sufficiently reliable. (Docket No. 139). The Court addressed Defendant's concerns regarding Dr. Schifrin's ability to satisfy causation and to establish the relevant standard of care applicable to nurses in Puerto Rico. Id. at 10-13.

In its Rule 59 motion, Defendant largely seeks to relitigate this Court's prior ruling. Defendant argues that Dr. Schifrin's testimony was not reliable because he: (1) failed to conclusively establish causation; (2) failed to testify as to the correct standard of care; and (3) his testimony was wrongly premised on

the fact that Dr. Pardo was absent from the hospital during key moments in this case. (Docket No. 153 at 15-24). However, as the Court explained in the aforementioned Opinion and Order at Docket No. 139 and above, Dr. Schifrin was well-qualified to opine on whether earlier intervention with Plaintiff was warranted, and his testimony was thus proper. While Defendant clearly believes Dr. Schifrin's methodology and conclusions were misguided and weak, it was defense counsel's job to convince the jury of that belief. As the Supreme Court noted in Daubert, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence" rather than "wholesale exclusion" of the evidence. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 596 (1993). Defense counsel had the opportunity to cross-examine Dr. Schifrin and present contrary evidence. His client is not now entitled to a new trial simply because those traditional methods of persuasion did not lead to a favorable outcome.

### 3. Jury Instruction and Verdict Form

Defendant also argues it is entitled to a new trial because the Court erred when it gave jury instruction number 26 ("Instruction 26") and included question 6(b) on the verdict form ("Question 6(b)"). (Docket No. 153 at 24-25). Instruction 26 read in full:

JURY INSTRUCTION NO. 26: COMPENSATORY DAMAGES

Plaintiff seeks to recover damages for her daughter JPC's physical injuries and mental and moral anguish. In this case, Plaintiff alleges that JPC has suffered physical injuries and moral anguish damages as a result of HIMA's staff's alleged deviation from the standard of care. HIMA denies that these damages were caused by a deviation from the standard of care.

The purpose of compensatory damages is to make the plaintiff whole – that is to compensate JPC for the damage that she has suffered. These damages are called "compensatory damages."

You must determine what loss, if any, JPC suffered that was caused by any negligence that you find HIMA has committed. You may award compensatory damages only for damages that Plaintiff proves were proximately or adequately caused by Dr. Pardo and/or HIMA's nurses' allegedly wrongful conduct. Regarding moral anguish damages in particular, it is essential to prove deep moral suffering and anguish. That means that a passing affliction will not give rise to an action for damages.

Evidence of the monetary value of intangible things like mental and moral anguish, or of pain and suffering, physical injuries and permanent injury and other noneconomic losses cannot be introduced and there is no standard for fixing any compensation to be awarded for these injuries.

Even though it is obviously difficult to establish a standard of measurement for these damages, that difficulty is not grounds for denying a recovery on these elements of damages. You should be guided by dispassionate common sense.

You must, therefore, make the best and most reasonable estimate you can, not from a

personal point of view, but from a fair and
impartial one. You are not permitted to award
speculative damages. And you must place a
monetary value on this, attempting to come to
a conclusion that will be fair and just to all
the parties. In calculating the amount of any
compensatory damages that JPC has suffered for
emotional harm and other losses, if at all,
consider the severity of the harm and the
length of time that she suffered the harm. **In
considering future mental anguish and
suffering damages, if at all, you should
estimate JPC's life expectancy guided by your
logic, common sense, personal knowledge and
experience.**

I recognize that this will be difficult for
you to measure in terms of dollars and cents,
but there is no other rule I can give you for
assessing this element of damages.

Lastly, if you find Defendant liable but find
that JPC's emotional distress resulting from
Dr. Pardo's and/or HIMA's negligence has no
monetary value, you may award her nominal or
token damages such as one dollar or another
minimal amount.

(Docket No. 144 at 33-35) (emphasis added).

Question 6(b) asked the jury to determine "[w]hat sum of money
do you find, by a preponderance of the evidence, would compensate
Plaintiff JPC for . . . [h]er past and future mental anguish and
suffering[.]" (Docket No. 147 at 3).

Defendant contends that Plaintiff's mother's testimony
regarding her daughter's condition was insufficient to allow the
jury to reasonably determine whether and how Plaintiff suffers
from her condition, the extent and nature of the condition, or its

duration. (Docket No. 153 at 25).[7] Defendant particularly challenges the language regarding future life expectancy, which it argues was never discussed at trial and therefore invited the jury to speculate on matters outside the realm of their common knowledge in determining a damages amount. Id. at 26-28.

As the Court explained when this objection was first raised, Magistrate Judge McGiverin's analysis in Rodriguez-Valentin is instructive. (Docket No. 152-3 at 92). And, since this Court's initial ruling on this objection, the First Circuit has affirmed that decision. See Rodriguez-Valentin, 2022 WL 556194. The district court in Rodriguez-Valentin held that a jury's verdict as to life expectancy was not overly speculative despite the absence of expert testimony on the subject. In that case, the jury heard from the plaintiff's mother and a life care planner concerning the hardships the plaintiff faced due to his cerebral palsy. See Rodriguez-Valentin, 2020 WL 6273760, at *4. The court explained that "[w]hile the life expectancy of a child with severe cerebral palsy likely would be a proper subject for expert testimony . . . it is a separate question whether a jury may return a verdict without expert testimony as to life expectancy." Id. The court ultimately

---

[7] Defendant originally challenged Instruction 26 and Question 6(b) before the case was submitted to the jury, and thus properly preserved the objections. (Docket No. 152-3 at 88-91, 96); Fed. R. Civ. P. 51(c). The Court agreed to modify the language of Instruction 26 but denied the objection and instructed the jury on future mental anguish and suffering damages. (Docket No. 152-3 at 92-95).

determined that "the jury heard testimony sufficient to inform,
together with the jury's logic, common sense, personal knowledge,
and experience, a reasonable estimate as to life expectancy." Id.
(internal quotation marks and citation omitted). The court also
held that the pain and suffering damages were supported by the
testimony from the life care planner and the plaintiff's family
"regarding the extreme challenges and suffering plaintiff faces
every day of his life and in nearly every aspect of his life." Id.
at *5. Reviewing this issue for plain error, the First Circuit
declined to "reach the legal question of whether Puerto Rico law
requires such expert testimony," but found that the defendant
offered "no authority demonstrating that it is clearly the case
under Puerto Rico law that a plaintiff must present expert
testimony about life expectancy to receive damages for future care
costs in a medical malpractice action." Rodriguez-Valentin, 2022
WL 556194, at *6-8.

Similarly, in the case at bar, **Defendant has not presented
any authority that mandates the presentation of expert testimony
in this scenario**. The Court is not persuaded that it was improper
to instruct the jury to rely on both the testimony of Plaintiff's
mother regarding Plaintiff's conditions and hardships and the
jury's own logic, common sense, personal knowledge and experience.
In the absence of any binding authority to the contrary,
Instruction 26 and Question 6(b) were properly presented to the

jury.

Further, to the extent Defendant's challenge on this issue relates to the high damages award, that issue is addressed below in the remittitur section. *See* <u>Annoni Mesias</u>, 2021 WL 1125019, at *4 ("[T]he Court will not grant a new trial simply because the award may be overly excessive; under such scenario, the remittitur petition would be more appropriate.").

### 4. <u>Statements by Plaintiff's Counsel During His Closing Argument</u>

Finally, Defendant argues a new trial is warranted because Plaintiff's counsel made a number of improper comments in his closing argument. (Docket No. 153 at 28-31). Defendant contends it was "clearly erroneous" for the Court not to "instruct the jury as to the impropriety of the comments and/or strike the same from the record," and thus a new trial must be conducted. <u>Id.</u> at 31.

In assessing the effect of allegedly improper statements made by counsel during closing arguments, courts examine:

> [T]he totality of the circumstances, including (1) the nature of the comments; (2) their frequency; (3) their possible relevance to the real issues before the jury; (4) the manner in which the parties and the court treated the comments; (5) the strength of the case; and (6) the verdict itself.

<u>Granfield v. CSX Transp., Inc.</u>, 597 F.3d 474, 490 (1st Cir. 2010). Generally, "[p]roviding the jury with timely and appropriate curative instructions to ignore the offending testimony is a common

way to obviate the need for ordering a mistrial." <u>Aguayo v. Rodriguez</u>, 2016 WL 3522259, at *3 (D.P.R. 2016), <u>aff'd sub nom</u>, <u>Mejias-Aguayo v. Doreste-Rodriguez</u>, 863 F.3d 50 (1st Cir. 2017) (quoting <u>Rodriguez-Torres v. Caribbean Forms Mfr., Inc.</u>, 399 F.3d 52, 63 (1st Cir. 2005)). Additionally, courts recognize that "[t]rials are adversarial processes in which things may be said which the other side regards as incorrect and sometimes offensive." <u>Mitchell v. Weaver</u>, 806 F.2d 300, 302 (1st Cir. 1986). Though courts should "intervene in instances of unfairness and impropriety," such instances are usually dealt with "through rebuttal by the opposing side[.]" <u>Id.</u>

Defense counsel objected multiple times on the record during Plaintiff's closing argument. (Docket No. 152-4 at 4-16, 28-31). The Court reviewed each objection and finds that none warrant ordering a new trial.

First, several objections were immediately followed by a curative instruction. <u>Id.</u> at 6, 13. The unequivocal instructions undoubtedly "obviate the need for ordering a mistrial" as to those objections. <u>Aguayo</u>, 2016 WL 3522259, at *3.

Second, Defendant objected to Plaintiff's counsel's statements concerning how the jury should calculate pain and suffering and mental anguish damages. (Docket No. 152-4 at 14). The Court sustained that objection. <u>Id.</u> While Defendant did not request, and the Court did not give, a specific curative

instruction, the jury was explicitly instructed on how to calculate pain and suffering and mental anguish damages in Instruction 26. (Docket No. 152-3 at 118-19). The jury was also told "[s]tatements, arguments, and questions by lawyers are not evidence." Id. at 105. When viewed in context, these statements by Plaintiff's counsel were not unduly prejudicial. *See* Portugues-Santana v. Rekomdiv Int'l Inc., 725 F.3d 17, 27 (1st Cir. 2013) (finding similar general instructions were sufficient to cure any possible adverse effects of allegedly improper statements made by plaintiff's counsel).

Further, Defendant raised a host of objections during Plaintiff's rebuttal closing argument. (Docket No. 152-4 at 28-31). Plaintiff's rebuttal focused primarily on damages apportionment between HIMA and Dr. Pardo. Id. In discussing apportionment, Plaintiff's counsel put words in Dr. Schifrin's mouth regarding the fault attributable to Dr. Pardo. Id. at 29. Outside the presence of the jury, the Court instructed Plaintiff's counsel not to present any argument regarding damages premised on Doctor Pardo's absence from the lawsuit. Id. at 30. While the Court did not admonish Plaintiff's counsel in the presence of the jury or give the jury a curative instruction, the failure to do so is not grounds for a new trial in this instance. Examining the "totality of the circumstances" surrounding Plaintiff's rebuttal closing argument, the Court finds that the potential prejudice

Defendant suffered was greatly reduced by Defendant's own closing argument. Most of Defendant's closing argument discussed Dr. Pardo's testimony, his rationale for taking the actions he did, and confirming his ultimate responsibility for Plaintiff's care. Id. at 16-28; *see also* Mitchell, 806 F.2d at 302 ("The usual way [incorrect statements by counsel during trial] are dealt with is through rebuttal by the opposing side[.]"). Additionally, the Court openly sustained three of Defendant's objections during the rebuttal closing argument and later instructed the jury on the evidentiary effect of statements by lawyers and of objections sustained during trial. (Docket Nos. 152-3 at 105-106; 152-4 at 28-30). Overall, Plaintiff's counsel's rebuttal closing argument does not warrant a mistrial.

Finally, it is unclear if Defendant challenges any additional statements that it did not object to at trial. Defendant inconsistently argues both that "Defense counsel objected to all instances of impropriety" and that a new trial is warranted "even if not all instances of the improper comments were not objected." (Docket No. 153 at 28, 31). To the extent Defendant does challenge any additional statements in the closing argument, the arguments which were not objected to will be reviewed only for plain error. *See* Aguayo, 2016 WL 3522259, at *3 (citing Smith v. Kmart Corp., 177 F.3d 19, 25-26 (1st Cir. 1999)). The Court will only consider a forfeited objection under plain error review if: "(1) an error

was committed; (2) the error was 'plain' (*i.e.*, obvious and clear under current law); (3) the error was prejudicial (*i.e.*, affected substantial rights); and (4) review is needed to prevent a miscarriage of justice." Id. After a careful review of the closing argument transcript, no additional statements made by Plaintiff's counsel warrant discussion.

### 5. Conclusion

Pursuant to the analysis above, Defendant's request for a new trial at Docket No. 153 is **DENIED.**

### C. Remittitur

In the alternative, Defendant petitions this Court for a remittitur, arguing that the jury's $16,000,000 damages award is excessive in light of the evidence presented at trial. (Docket No. 153 at 31). "A party seeking remittitur bears a heavy burden of showing that an award is grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand." Marcano Rivera, 415 F.3d at 173 (quoting Currier v. United Techs. Corp., 393 F.3d 246, 256 (1st Cir. 2004)). "In reviewing an award of damages, the district court is obliged to review the evidence in the light most favorable to the prevailing party[.]" Wortley v. Camplin, 333 F.3d 284, 297 (1st Cir. 2003) (internal quotation marks and citation omitted). "[T]he paramount focus" in this analysis is "the evidence presented at trial." Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 579

(1st Cir. 1989). The First Circuit adheres to the "maximum recovery rule," which allows the Court to "direct a remittitur geared to the maximum recovery for which there is evidentiary support," subject to Plaintiff's right to reject the remittitur and instead proceed with a new trial on the disputed damages claim. *See* <u>Trainor v. HEI Hosp., LLC</u>, 699 F.3d 19, 33 (1st Cir. 2012).

Here, though the trial evidence supports the jury's liability determination, the $16,000,000 award for physical damages and mental anguish and suffering is "grossly disproportionate to any injury established by the evidence[.]" <u>Koster v. Trans World Airlines, Inc.</u>, 181 F.3d 24, 34 (1st Cir. 1999). Therefore, **remittitur is warranted.** Because the jury was asked to award separate damages amounts for physical damages and for past and future mental anguish and suffering, each is discussed separately below.

### 1. <u>Physical Damages</u>

At trial, Plaintiff's mother was the only witness who testified regarding Plaintiff's physical conditions. She explained how Plaintiff suffers from cerebral palsy, quadriplegia, asthma, and developmental delay and provided color as to the struggles of Plaintiff's daily life. (Docket No. 152-1 at 91-92, 103-106). These struggles include uncontrollably hitting herself, biting herself, and tearing at her own hair. <u>Id.</u> at 91, 106. The jury also heard how Plaintiff cannot speak, eat on her own, use the bathroom on

her own, or focus. Id. Plaintiff's mother added that "[e]verything
that [Plaintiff] does, she does with a lot of difficulty." Id. at
91.

While the jury undoubtedly heard and saw evidence
establishing the physical and debilitating pain Plaintiff suffers
from, the jury heard no testimony that would justify such a high
physical damages award. Most notably, Plaintiff failed to call a
single witness—expert or otherwise—who could provide a medical
assessment of the child's limitations and help the jury place a
dollar figure on Plaintiff's physical damages. The jury's award
reflects wild speculation based on the minimal evidence and
testimony they were presented with at trial. While the Court
recognizes that a "jury's assessment of the appropriate damages
award is entitled to great deference," Guzman v. Boeing Co., 366
F. Supp. 3d 219, 228 (D. Mass. 2019) (citation omitted), the trial
evidence **does not** support an $8,000,000 award for physical damages.

To assist in determining the appropriate damages amount, the
Court looks to awards in comparable cases. See e.g., Aponte-Rivera
v. DHL Sols. (USA), Inc., 650 F.3d 803, 811 (1st Cir. 2011)
("Awards in comparable cases are instructive."); Nieves v.
Municipality of Aguadilla, 2015 WL 3932461, at *9 (D.P.R. 2015)
("Though the evidence presented at trial dictates the amount of
remittitur, examination of other cases is useful in reaching a
decision."). The First Circuit has decided that, in diversity case,

federal courts should use other federal cases to review jury awards. *See* Annoni Mesias, 2021 WL 1125019, at *6 (citing Suero-Algarin v. CMT Hosp. Hima San Pablo Caguas, 957 F.3d 30, 40-42 (1st Cir. 2020); Marcano Rivera, 415 F.3d at 172).

Following this directive, the Court examined physical damages awards in similar cases from the First Circuit. This Court once again finds Rodriguez-Valentin instructive given its recency and factual similarity to the case at bar. *See* Rodriguez-Valentin, 2020 WL 6273760, aff'd, 2022 WL 556194.[8] There, after hearing testimony concerning the minor plaintiff's complications from his mother and a life care planner, the jury awarded a combined $1,300,000 in damages for both emotional and physical pain and suffering. Id. at *1, 5. The district court upheld the jury award because it was not "grossly excessive" or "exaggeratedly high," though Magistrate Judge McGiverin noted that the $1,300,000 award was "undoubtedly generous" given the evidence presented. Id. at *5. The First Circuit subsequently affirmed that decision. *See* Rodriguez-Valentin, 2022 WL 556194, at *8.

This Court also reviewed the First Circuit's decision in Muniz v. Rovira. There, the court upheld a jury's $2,000,000 compensatory damages award to compensate the minor plaintiff for several birth defects allegedly caused by the negligence of her mother's

---

[8] Both Plaintiff and Defendant relied on this case in support of their arguments concerning remittitur. (Docket Nos. 153 at 35; 159 at 15, 23).

obstetrician. *See* <u>Muniz</u>, 373 F.3d at 1–9. The plaintiff's physical impairments included a brachial plexus injury, Erb's palsy, and a shoulder dystocia. <u>Id.</u> at 4. Unlike in the case at bar, the <u>Muniz</u> jury heard expert testimony concerning the effect of the plaintiff's injuries on her physical wellbeing and the future pain to be endured by the plaintiff. <u>Id.</u> at 9. The First Circuit held that, though "large," the damages award "cannot be deemed conscience-shocking plainly erroneous, or a miscarriage of justice." <u>Id.</u>[9]

**Having reviewed the record and analogous cases, the Court finds that $2,000,000 is the maximum physical damages award that can be justified based on the facts of this case**. The jury's award in the case at bar was well above similar awards that were deemed "large" and "undoubtedly generous," and which were based on more evidence and testimony than the jury was presented with here. *See* <u>Muniz</u>, 373 F.3d at 9; <u>Rodriguez-Valentin</u>, 2020 WL 6273760, at *5.

### 2. <u>Past and Future Mental Anguish and Suffering</u>

While trial evidence of Plaintiff's physical damages was limited, evidence of Plaintiff's past and future mental anguish and suffering can only be described as severely limited. Plaintiff failed to provide any medical testimony concerning her mental

---

[9] While <u>Muniz</u> differs from this case procedurally, in that the defendant failed to seek a remittitur in the lower court and the First Circuit thus reviewed the claims only for plain error, *see* <u>id.</u>, the case still provides a helpful benchmark to compare the trial evidence and ultimate jury award with the case at bar.

anguish and suffering. And Plaintiff simply made no attempt to establish *future* suffering with any certainty or to confirm her capacity to suffer in the first instance. While Plaintiff's mother did reference certain mental impairments that Plaintiff suffers from as a result of her conditions, such as an inability to define her feelings and an inability to focus (Docket No. 152-1 at 91, 106), that evidence was scant. The Court appreciates that "converting feelings such as pain, suffering, and mental anguish into dollars is not an exact science," but the jury's damages award here shocks the conscience when reviewed in light of the sparse evidence in the record. Correa v. Hosp. San Francisco, 69 F.3d 1184, 1198 (1st Cir. 1995).

A comparison with the Rodriguez-Valentin verdict further highlights the inordinate magnitude of this damages award.[10] Again,

---

[10] In addition to Rodriguez-Valentin, both parties cited Arroyo Picart v. Fundacion Dr. Pila Iglesias, Inc., No. 15-1523 (MEL) and Santos Arrieta v. Hosp. Del Maestro, Inc., 2019 WL 4060466 (D.P.R. 2019) in their briefs. (Docket Nos. 153 at 35; 159 at 15, 23). In Arroyo Picart, the plaintiff was born with disabilities due to the alleged negligence of hospital personnel and the mother's obstetrician. Following a one-day jury trial solely on the issue of damages, the jury awarded $2,000,000 for emotional pain and suffering. However, neither party provided this Court with a full transcript of the trial, and none exists on the docket. Therefore, while the Court notes the ultimate jury award, it cannot adequately compare the facts and circumstances of that trial to the case at bar. Additionally, while the district court in Santos Arrieta upheld the jury's award of $1,209,000 for emotional pain and suffering for a child who allegedly sustained brain injuries during birth, the First Circuit recently vacated that decision based largely on the district court's failure to follow the procedural mechanisms outlined in Rule 50. *See* Santos-Arrieta v. Hosp. Del Maestro, 14 F.4th 1, 12 (1st Cir. 2021). Given these deficiencies in other recent and similar cases from this district, the Court primarily relies on the Rodriguez-Valentine decision for its comparison.

The Court also notes that while Plaintiff's counsel cited the multi-million-dollar damages awards in his last three malpractice jury verdicts, he cited the total awards in those cases and failed to state that the physical and mental

the Rodriguez-Valentin jury awarded $1,300,000 in combined physical and emotional pain and suffering damages despite hearing the testimony of both the plaintiff's mother and a life care planner. *See* Rodriguez-Valentin, 2020 WL 6273760, at *5. There, the court noted that the jury "heard substantial evidence as to plaintiff's permanent medical condition and present sufferings." Id. at *4. Such evidence included testimony about the plaintiff's regular therapy sessions, as well as his routine appointments with a neurologist, pediatrician, and physiatrist. Id. Simply put, the jury in Rodriguez-Valentin awarded significantly less damages for mental anguish and suffering after hearing more detailed testimony on the subject.

After reviewing the record and conducting a comparison with similar cases from this district, **the Court finds that $1,000,000 is the maximum award that can be justified for past and future mental anguish and suffering in this case.**

### 3. Conclusion

For the foregoing reasons, Defendant's petition for remittitur is **GRANTED**. The jury award is reduced to $2,000,000 for physical damages and $1,000,000 for past and future mental anguish and suffering. Because the jury attributed 40% of the negligence to Defendant, Defendant is liable for $1,200,000 of this total

___
suffering damages in each case was far less than $16,000,000. (*See* Docket No. 159 at 15).

award. Should Plaintiff choose to forego this remittance, a new
trial will be held solely on the issue of damages. **Plaintiff shall
inform the Court of its decision whether it would like to proceed
to a new trial in lieu of a $3,000,000 award within twenty-eight
(28) days of entry of this Order.**

### D. Amendment of Judgment Entered

Finally, Defendant filed a *Motion* requesting that the Court
amend the judgment to reflect only the amount of the damages award
apportioned to Defendant. (Docket No. 154). Given the Court's
decision to grant Defendant's petition for remittitur, this motion
is **DISMISSED AS MOOT.** However, any subsequent judgment that is
entered in this case shall specify the amount of damages
apportioned to Defendant.

### III.   CONCLUSION

For the foregoing reasons, Defendant's *Motion for Judgment as
a Matter of Law* is **DENIED**, Defendant's *Motion for New Trial as per
FRCP 59 and/or Remittitur* is **GRANTED IN PART AND DENIED IN PART**,
and Defendant's *Motion Requesting Amendment of Judgment Entered* is
**DISMISSED AS MOOT.** Plaintiff shall inform the Court of its decision
whether it would like to proceed to a new trial in lieu of a
$3,000,000 award within twenty-eight (28) days of entry of this
Order.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of March 2022.


                         S/RAÚL M. ARIAS-MARXUACH
                         UNITED STATES DISTRICT JUDGE